BARNES & THORNBURG LLP
One North Wacker Drive, Suite 4400
Chicago, Illinois 60606
Telephone: (312) 357-1313
Facsimile: (312) 759-5646

Deborah L. Thorne (admitted *pro hac vice*)
Kathleen L. Matsoukas (KL-1821)
Email: deborah.thorne@btlaw.com
        kathleen.matsoukas@btlaw.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| DELPHI CORPORATION, *et al.*, | No. 05-44481 (RDD) |
| Reorganized Debtors. | Jointly Administered |
| DELPHI CORPORATION, *et al.* | |
| Plaintiffs, | Adv. Pro. No. 07-2348 |
| -against- | |
| JOHNSON CONTROLS, JOHNSON CONTROLS BATTERY GROUP, JOHNSON CONTROLS GMBH & CO. KG and JOHNSON CONTROLS, INC. | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF JOHNSON CONTROLS, JOHNSON CONTROLS BATTERY GROUP, JOHNSON CONTROLS GMBH & CO. KG AND JOHNSON CONTROLS, INC. TO: (A) VACATE CERTAIN PRIOR ORDERS OF THE COURT; (B) DISMISS THE COMPLAINT WITH PREJUDICE; OR (C) IN THE ALTERNATIVE, TO DISMISS THE CLAIMS AGAINST CERTAIN DEFENDANTS NAMED IN THE COMPLAINT AND TO REQUIRE PLAINTIFFS TO FILE A MORE DEFINITE STATEMENT**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................... 1

IDENTITY OF DEFENDANTS ................................................................................. 3

STATEMENT OF FACTS ......................................................................................... 4

    A.      **The Debtors Fail to Give JCI Notice of Any of the Motions to Preserve the Avoidance Claims and/or Extend Time to Serve Those Claims.** .................... 4

          1.     The Debtors' First Extension Motion and Failure to Provide Notice to JCI. ............................................................................................... 4

          2.     The Debtors Commence an Adversary Proceeding Against JCI............... 6

          3.     The Debtors File the First Amended Joint Plan of Reorganization ....................................................................................... 6

          4.     The Debtors' Second Extension Motion and Failure to Provide Notice to JCI. ........................................................................................ 7

          5.     The Debtors' Third Extension Motion and Failure to Provide Notice to JCI. ........................................................................................ 8

          6.     The Debtors File a Modified Plan. ........................................................ 9

          7.     The Debtors' Fourth Extension Motion and Failure to Provide Notice To JCI. ...................................................................................... 10

    B.      **The Debtors Serve the Complaint on JCI on March 24, 2010.** ...................... 11

    C.      **Additional Service Failures on the Part of the Debtors With Respect to JCI.** ....................................................................................................................... 12

ARGUMENT .............................................................................................................. 13

    I.      **THE COMPLAINT IS BARRED BY RES JUDICATA** ............................... 13

          A.     **Res Judicata Prevents the Debtors From Pursuing the JCI Adversary Proceeding Because the Confirmed Plan Expressly Abandoned Claims Against JCI.** .......................................... 13

          B.     **Even if the Debtors' Amendment of Exhibit 7.24 Was Valid, the Blanket Reservation of Claims in Exhibit 7.19 is Insufficient to Preserve Debtors' Claims Against JCI.** ............................................. 15

II.   THE EXTENSION ORDERS ARE VOID AS TO JCI FOR THE DEBTORS' FAILURE TO COMPLY WITH PROCEDURAL DUE PROCESS REQUIREMENTS, AND THE COMPLAINT IS THUS TIME-BARRED BY THE TWO-YEAR STATUTE OF LIMITATIONS. .............. 17

   A.   The Court is Free to Vacate the Extension Orders ............................ 17

   B.   This Court Should Void the Extension Orders as They Apply to JCI Because the Lack of Notice to JCI Renders the Orders Unenforceable. ..................................................................... 18

   C.   The Complaint Should be Dismissed as Barred by the Two-Year Statute of Limitations Applicable to Avoidance Actions. ................... 20

III.  THE COMPLAINT IS BARRED BY JUDICIAL ESTOPPEL ................... 22

IV.   THE FOREIGN ACTIONS AND THE UNDER $250,000 ACTIONS AGAINST JCI ARE BARRED AS ABANDONED. ..................................... 23

V.    THE COMPLAINT MUST BE DISMISSED FOR FAILURE TO PLEAD FACTS SUFFICIENT TO STATE A CLAIM FOR RELIEF. ..................... 25

VI.   IN THE ALTERNATIVE, DEBTORS SHOULD BE REQUIRED TO FILE A MORE DEFINITE STATEMENT ............................................. 28

VII.  THE JCI DEFENDANTS INCORPORATE ALL APPLICABLE ARGUMENTS RAISED BY OTHER DEFENDANTS IN THEIR DISMISSAL MOTIONS. ........................................................... 28

CONCLUSION ............................................................................ 28

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Angell v. Haven (In re Careamerica)*, 409 B.R. 346 (Bankr. E.D.N.C. 2009)................26, 27, 28

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009)......................................................................2, 26, 28

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)..........................................2, 25, 26, 27, 28

*Browning v. Levy*, 283 F.3d 761 (6th Cir. 2002)..................................................................15, 16

*In Re Chartschlaa*, 538 F.3d 116 (2d Cir. 2008) ........................................................................ 24

*City of New York v. New York, N.H. & H. R.R. Co.*, 344 U.S. 293 (1953)............................19, 20

*Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 542 (1985) .................................................. 18

*Crown Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983) ........................................................... 20

*D & K Properties Crystal Lake v. Mutual Life Insurance Co.*, 112 F.3d 257 (7th Cir. 1997) ...................................................................................................................................14, 15

*In re Fugazy Express, Inc.*, 982 F.2d 769 (2d Cir. 1992) ........................................................... 17

*Fustok v. Conticommodity Services, Inc.*, 122 F.R.D. 151 (S.D.N.Y. 1988).............................. 18

*Galerie Des Monnaies of Geneva, Ltd. v. Deutsche Bank, A.G., New York Branch (In re Galerie Des Monnaies of Geneva, Ltd)*, 55 B.R. 253 (Bankr. S.D.N.Y. 1986).................... 22

*In re Global Crossing, Ltd.*, 385 B.R. 52 (Bankr. S.D.N.Y. 2008)......................................19, 20

*In Re Grossinger's Assocs.*, 184 B.R. 429 (Bankr. S.D.N.Y. 1995) .......................................... 25

*In re I. Appel Corp.*, 300 B.R. 564 (Bankr. S.D.N.Y. 2003) ...................................................... 13

*Int'l Asset Recovery Corp. v. Thomsom McKinnon Sec. Inc.*, 335 B.R. 520 (S.D.N.Y. 2005).................................................................................................................................... 14

*In re Johns-Manville Corp.*, --- F.3d ---, Nos. 06-2103-bk, 06-2118-bk and 06-2186-bk, 2010 U.S. App. LEXIS 5877 (2d Cir. Mar. 22, 2010)...................................................17, 19

*Lachance v. Erickson*, 522 U.S. 262 (1998) .............................................................................. 18

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)....................................... 18

*New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001) ............................................................ 22

*Order of R.R. Telegraphers v. Ry Express Agency, Inc.*, 321 U.S. 342 (1944) ........................... 21

*Rosenshein v. Kleban*, 918 F. Supp. 98 (S.D.N.Y. 1996) .......................................................... 22

*Sure-Snap Corp. v. State Street Bank and Trust Co.*, 948 F.2d 869 (2d Cir. 1991) ............... 14, 16

*Textile Banking Co. v. Rentschler*, 657 F.2d 844 (7th Cir. 1981) .............................................. 18

*United States v. Uccio*, 940 F.2d 753 (2d Cir. 1991) ................................................................. 18

*United Student Aid Funds, Inc. v. Espinosa*, 130 S. Ct. 1367 (2010) ........................................ 20

*In re Venture Mortgage Fund, L.P.*, 245 B.R. 460 (Bankr. S.D.N.Y. 2000) ............................... 22

## FEDERAL STATUTES AND RULES

11 U.S.C. § 1127 ......................................................................................................................... 9

11 U.S.C. § 546(a) ........................................................................................................ 3, 4, 20, 29

11 U.S.C. § 547 .................................................................................................................. 4, 25, 28

28 U.S.C. § 158(d) ...................................................................................................................... 18

Fed. R. Civ. P. 4(m) ............................................................................................................ 4, 5, 20

Fed. R. Civ. P. 12(b)(6) ..................................................................................................... 3, 25, 29

Fed. R. Civ. P. 12(e) .......................................................................................................... 4, 29, 30

Fed. R. Civ. P. 60(b)(4) ............................................................................................................... 18

## OTHER CITATIONS

Hon. William L. Norton, Jr. & William L. Norton III, Norton Bankruptcy Law and
    Practice § 109:16 (3d. ed. 2009) .......................................................................................... 14

Defendants Johnson Controls, Johnson Controls Battery Group, Johnson Controls GmbH & Co. KG and Johnson Controls, Inc. (each a "**Defendant**," and collectively "**JCI**"), by their undersigned counsel, in support of their motion to (A) Vacate Certain Prior Orders of the Court; (B) Dismiss the Complaint with Prejudice; or (C) In the Alternative, to Dismiss the Claims Against Certain Defendants Named in the Complaint and to Require Plaintiffs to File a More Definite Statement (the "**JCI Motion**"), respectfully state as follows:

## PRELIMINARY STATEMENT

On March 24, 2010, the Debtors purported to serve JCI with an adversary complaint (the "**Complaint**," attached to the JCI Motion as <u>Exhibit A</u>) that had purportedly been filed under seal on or about September 28, 2007, more than 2 ½ years earlier. JCI had never previously received *any* notice that the Debtors had filed this complaint, nor notice that JCI might be subject to the Debtors' assertion of post-confirmation avoidance claims on transfers that were made in mid- to late-2005, approximately 4 ½ to 5 years ago. Indeed, it is undisputed that the Debtors sought to keep these complaints secret precisely so that they could increase their chances of negotiating favorable business deals with various parties (including JCI) without having to disclose that preference actions had already been filed against these entities without their knowledge. Despite having previously represented to the Court that it was extremely unlikely that any of these preference claims would ever be prosecuted (including those against JCI), the Debtors now seek to revive and pursue these claims notwithstanding the egregious procedural due process violations that the Debtors have committed and that have resulted in substantial prejudice to JCI.

The federal rules which permit extensions of time to serve complaints and to seal documents in certain limited instances are not without limits. They should not be used to justify extending the two-year statute of limitations for preference actions for more than two years,

without notice, where the sole justification for doing so was the Debtors' own self-serving motives and representations that the claims would not be pursued. Moreover, they cannot serve to revive claims that were either expressly abandoned by the Debtors in a confirmed plan of reorganization that was entered more than two years ago, or impliedly abandoned by the Debtors for failing to specifically retain them in the modified plan. Nor should the Debtors themselves be able to get away with representing to the Court that they were expressly abandoning these preference claims, only to turn around years later and attempt to serve the preference complaints when problems with consummating the Confirmed Plan arose.

Even assuming these constraints did not exist and the complaint were permitted to stand, it would nevertheless fail under Rule 12(b)(6) of the Federal Rules of Civil Procedure and Rule 7012(b)(6) of the Federal Rules of Bankruptcy Procedure. The bare-bones Complaint lists only the dates of the alleged preferential transfers, the amounts of the transfers, and the types of transfers. Nowhere does the Complaint state who made the transfers, to whom the transfers were made, or any other facts supporting their claims other than a mere recitation of the elements of the cause of action. Such a pleading is insufficient as a matter of law under the Supreme Court's recent decisions in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).

The audacity of the Debtors in blithely disregarding and dismissing JCI's procedural due process rights to its own benefit under the guise that its actions were somehow ultimately beneficial to JCI should not be endorsed by this Court. Any result other than dismissal of the Complaint with prejudice would not only injure JCI's rights to notice and an opportunity to be heard, it would seriously impact its ability to successfully defend against five-year old claims, a full two years after the expiration of the statute of limitations. Accordingly, JCI seeks an Order

(i) vacating certain prior orders of the Court; (ii) dismissing the Complaint in its entirety with prejudice on the grounds that it is barred by (1) the two-year statute of limitations imposed by 11 U.S.C. § 546(a); (2) Fed. R. Civ. P. 12(b)(6) and Fed. R. Bankr. P. 7012(b)(6) for failure to state a claim; and/or (3) the doctrines of *res judicata* and judicial estoppel; (iii) in the alternative, dismissing the Complaint with prejudice as to Johnson Controls GmbH & Co. KG as the holder of an abandoned foreign claim; (iv) in the alternative, requiring the Debtors to file a more definite statement pursuant to Fed. R. Civ. P. 12(e), addressing the deficiencies in the Complaint; and (v) for such other and further relief as this Court deems proper and just.

## <u>IDENTITY OF DEFENDANTS</u>

Notwithstanding anything to the contrary, Johnson Controls, Inc., Johnson Controls Battery Group, and Johnson Controls GmbH & Co. KG ("**Foreign Defendant**") are separate and distinct legal entities. However, to the fullest extent that the Debtors' ambiguous naming of "Johnson Controls" applies to affiliates of such parties, the underlying motion to dismiss and this memorandum is also filed on their behalf.  JCI has elected to submit a joint motion to dismiss and memorandum of law on behalf of all defendants in this adversary proceeding merely as a matter of efficiency and convenience for the Court and other parties. Nothing constitutes nor should be deemed to constitute an agreement among or consolidation of the defendants regarding joint liability for any of the claims, causes of action, or other matters alleged by the Debtors in this proceeding.  Each of the defendants expressly reserves all of its claims, causes of action, defenses, counterclaims, crossclaims, rights, and remedies arising in or related to this matter, including, without limitation, any such claims against other defendants.

Moreover, the Foreign Defendant is a German company that has not been properly served with the Complaint in accordance with the Hague Convention and other applicable law. The Debtors recognized this continuing need for proper foreign service in that certain Reorganized

Debtors' Emergency Motion For Order Under Section 105(a) of The Bankruptcy Code, Fed. R. Bankr. P. 7004(a) And 9006(b)(1), and Fed. R. Civ. P. 4(m) Extending Deadline To Serve Process For Certain Avoidance Actions, dated March 25, 2010 (Docket No. 11 in the JCI Adversary Proceeding). The Foreign Defendant does not waive and has not waived its right to such proper service. Accordingly, the Foreign Defendant is not a "First Wave Movant" required to file a dismissal motion on or before May 14, 2010, and the Foreign Defendant reserves its right to file an additional or supplemental "Second Wave Dismissal Motion" pursuant to such procedures as the Court may establish, and to contest service of process.

## STATEMENT OF FACTS

On October 8, 2005, and October 14, 2005, Delphi Corporation and certain of its subsidiaries and affiliates (collectively the "**Debtors**" or "**Delphi**") each filed voluntary petitions for relief under Title 11 of Chapter 11 of the United States Bankruptcy Code (the "**Bankruptcy Code**"). Accordingly, under 11 U.S.C. § 546(a), the two-year statute of limitations for the Debtors to bring avoidance actions expired in October of 2007.

A. **The Debtors Fail to Give JCI Notice of Any of the Motions to Preserve the Avoidance Claims and/or Extend Time to Serve Those Claims.**

1. **The Debtors' First Extension Motion and Failure to Provide Notice to JCI.**

On August 6, 2007, shortly before the two-year limitations period was set to expire, the Debtors sought entry of an order seeking, among other things, the establishment of procedures for certain adversary proceedings, including those commenced under 11 U.S.C. § 547. Those procedures sought to include (a) leave for Debtors to file avoidance actions under seal; (b) an extension of time beyond the 120-day period provided for in Fed. R. Civ. P. 4(m) to serve summonses and complaints; and (c) a stay of adversary proceedings until service of process was

effectuated.  (Docket No. 8905, ¶¶ 33-38 ("**First Extension Motion**").).)[1]  The Debtors justified

their need for the relief sought in the First Extension Motion by asserting that most of the

adversary proceedings would be resolved by confirmation of its plan of reorganization (which

provided for payment of the unsecured claims on a 100% basis) and thus that they would never

be pursued.  (First Extension Motion ¶¶ 33-34.)  The Debtors represented to the Court that the

adversary proceedings would "become relevant again only in the unlikely event that the Debtors

do not timely emerge from chapter 11."  (*Id.* ¶ 16.)  They further represented that filing the

actions under seal would "avoid unnecessarily alarming potential defendants" as the Debtors

sought to work with the potential defendants to "preserve and repair" the Debtors' "business

relationship" with those defendants.  (*Id.* ¶ 37.)

The First Extension Motion also sought authority to abandon certain causes of action

including avoidance actions for transfers to a party of less than $250,000 in the aggregate and

those on account of "payments to foreign suppliers."  (*Id.* ¶¶ 25, 26.)

In the First Extension Motion, the Debtors stated that service of the motion had been

made in accordance with the Court's Supplemental Case Management Order (Docket No. 2883)

and the Court's Eighth Supplemental Case Management Order (Docket No. 5418).  (*Id.* ¶ 55.)

The Court's Supplemental Case Management Order required that "[a]ll Filings shall be served

(a) via overnight mail upon all parties with a particularized interest in the subject of the

Filing . . . ."  (Supplemental Case Management Order ¶ 15.)

JCI received no notice of the First Extension Motion by overnight mail or any other

method.  (Declaration of David E. Kirtley ("**Kirtley Decl.**") ¶ 3, attached to the JCI Motion as

Exhibit B.)  Indeed, the Affidavit of Service for the First Extension Motion does not list JCI as

---

[1] Due to the voluminous nature of the pleadings, affidavits of service, and other publicly-filed documents referenced herein, the documents are not attached to the JCI Motion as exhibits but rather referenced by docket number.

one of the parties served with the First Extension Motion. (*See generally* Docket No. 9039.) Nor did the Debtors and JCI enter into any tolling agreement with respect to the claims against JCI. Because JCI had no notice of the First Extension Motion, JCI had no ability to file an objection or otherwise challenge the entry of the order requested by the Debtors.

On August 16, 2007, the Court entered an order providing, among other things, the requested abandonment, an extension of time to March 31, 2008 to serve the adversary complaints, and permission to file the complaints under seal. (*See* Docket No. 9105 (the "**Procedures Order**").)

### 2. The Debtors Commence an Adversary Proceeding Against JCI.

On September 28, 2007, the Debtors commenced Adversary Proceeding No. 07-2348 against JCI seeking the recovery of $1,918,222.32 in alleged preferential transfers (the "**JCI Adversary Proceeding**"). The Complaint, which does not appear on the docket until March 18, 2010 (*see* Adv. Pro. Docket No. 6), is dated September 26, 2007, but JCI has been unable to confirm that the Complaint was actually filed before the statute of limitations for avoidance actions ran on or about October 13, 2007. As set forth below, because the Complaint provides no specificity about which of the JCI Defendants received or benefitted from the alleged transfers at issue in the Complaint, the individual Defendants cannot evaluate whether the claims against them are above or below the $250,000 threshold for claims that Debtors have abandoned.

### 3. The Debtors File the First Amended Joint Plan of Reorganization.

On or about December 10, 2007, the Debtors filed their First Amended Joint Plan of Reorganization (Docket No. 11386) (the "**Confirmed Plan**"), which was confirmed by order of the Court dated January 25, 2008 (Docket No. 12359) (the "**Confirmation Order**"). The

Confirmed Plan provided for the payment in full of general unsecured claims held by creditors of the Debtors. (Confirmed Plan at 30, §5.3.)

Exhibit 7.24 to the Confirmed Plan, entitled "Retained Actions," set forth the various claims and actions that the Debtors sought to retain under the Confirmed Plan. (*See* Docket No. 11608.) Notably, Exhibit 7.24 did not contain any reference to any potential claims against JCI.[2]

### 4. The Debtors' Second Extension Motion and Failure to Provide Notice to JCI.

On February 8, 2008, the Debtors filed a motion seeking a second extension – until May 31, 2008 – to serve their sealed complaints. (Docket No. 12922 ("**Second Extension Motion**") ¶ 18.) The Debtors asserted in the Second Extension Motion that the purpose of the motion was to "enable the Debtors to fulfill their fiduciary responsibility to preserve valuable estate assets in a manner that would not unnecessarily disrupt the emergence process or the Debtors' current business relationships with potential defendants that are necessary to the Debtors' ongoing operations," as well as to reduce the "administrative and economic burdens of the adversary proceedings to the Debtors, the Court, and the defendants." (*Id.* ¶ 21.)

The Second Extension Motion reaffirmed that the Debtors would "not retain any causes of action asserted in the [adversary proceedings] except those specifically listed in Exhibit 7.24 of the Plan." (*Id.* ¶ 17.) In fact, the Debtors stated in the Second Extension Motion that of the 742 adversary proceedings commenced under seal, only the claims related to Laneko Engineering Co., Wachovia Bank, National Association, Laneko Engineering Co., Inc. and their affiliates and subsidiaries (the "**Laneko Defendants**") were subject to the Procedures Order. (*Id.*

---

[2] Section 14.3 of the Confirmed Plan and Modified Plan (defined below) provide that the Debtors "may alter, amend, or modify any exhibits to this Plan under Section 1127(a) of the Bankruptcy Code *at any time prior to the Confirmation Date*." (Emphasis added). The Confirmation Date was January 25, 2008. Thus, after January 25, 2008, the Debtors did not have the right under the Modified Plan to amend or add to Exhibit 7.24 (renumbered as Exhibit 7.19 in the Modified Plan).

¶ 17 n.4.) This fact was confirmed by the Court at oral argument, where the Court recognized that "[t]he plan [only] reserve[d] or retain[ed] the ability to pursue a very small number of avoidance actions." (March 19, 2008 Tr. at 22, attached to the JCI Motion as <u>Exhibit C</u>.)

Again, the Debtors gave no notice of the Second Extension Motion to JCI, notwithstanding their representations that the Debtors had complied with the applicable notice procedures. (*See* Second Extension Motion ¶ 26; Kirtley Decl. ¶ 3.) The affidavit of service for the Second Extension Motion does not list JCI as having been served with the motion. (*See generally* Docket No. 12970.) Accordingly, JCI had no opportunity to object to the Second Extension Motion.

On March 28, 2008, the Court granted the Second Extension Motion. (*See* Docket No. 13277 (the "**Second Extension Order**").)

5. **The Debtors' Third Extension Motion and Failure to Provide Notice to JCI.**

On April 4, 2008, the Debtors announced that the plan investors had refused to fund their investments under the Confirmed Plan and that the necessary exit financing for the plan would not close. On April 10, 2008, the Debtors sought yet again to extend the service deadline for the adversary proceedings to 30 days after substantial consummation of the Debtors' plan. (Docket No. 13361 (the "**Third Extension Motion**") ¶ 19.) The Debtors again attempted to justify the need for relief on the need to avoid "disrupt[ing] the emergence process or the Debtors' current business relationships with potential defendants that are necessary to the Debtors' ongoing operations." (*Id.* ¶ 22.) Moreover, the Debtors asserted that the third extension was in the best interests of all parties because "most of the Adversary Proceedings will not be prosecuted if the Plan were to become effective and likely will not be prosecuted under any modified plan." (*Id.* ¶ 22.)

As with the previous motions, the Debtors did not give notice to JCI of the Third

Extension Motion. (Kirtley Decl. ¶ 3.) The affidavit of service for the Third Extension Motion

does not list JCI as having been served with the motion. (*See generally* Docket No. 13415.) On

April 30, 2008, the Court granted the Third Extension Motion. (*See* Docket No. 13484 (the

"**Third Extension Order**").)

### 6. The Debtors File a Modified Plan.

On October 3, 2008, the Debtors filed a motion under 11 U.S.C. § 1127 for an order

approving (i) certain modifications to the Plan and related disclosure statement and (ii) related

procedures for re-soliciting votes on the Confirmed Plan, as modified (the "**Plan Modification**

**Motion**"). (Docket No. 14310.) On June 1, 2009, the Debtors filed a supplement to the Plan

Modification Motion which sought approval of certain modifications to the Confirmed Plan.

(*See* Docket No. 16646.) On June 16, 2009, the Debtors filed the First Amended Plan of

Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession

(As Modified) (the "**Modified Plan**"). (*See* Docket No. 17030.) The Debtors filed the exhibits

to the Modified Plan on July 2, 2009. (*See* Docket No. 17557.)

Exhibit 7.19 to the Modified Plan corresponded to Exhibit 7.24 of the Confirmed Plan

and likewise contained a list of the retained causes of action. However, unlike Exhibit 7.24 to

the Confirmed Plan, Exhibit 7.19 to the Modified Plan listed certain adversary proceedings,

including the adversary proceeding against JCI, as included in the list of retained actions, despite

that they were not listed on Exhibit 7.24. Exhibit 7.19 also contained the statement that "[t]he

Debtors reserve their right to modify this list to amend, add, or remove parties or otherwise

update this list, but disclaim any obligation to do so." JCI could not have reasonably expected

this exhibit modification, as Section 14.2 of the Confirmed Plan only permitted any such amendments *prior to* the Confirmation Date.

Moreover, the Debtors did not serve JCI with the Plan Modification Motion, the Modified Plan, or the exhibits thereto. (Kirtley Decl. ¶ 3.) The affidavits of service for the Plan Modification Motion and the exhibits to the Modified Plan do not list JCI as recipients of the documents. (*See* Docket Nos. 16657, 17618.) Indeed, the "Plan of Reorganization" page at the claims agent website for this case contains a copy of Exhibit 7.24 but not a copy of Exhibit 7.19. (*See* http://www.dphholdingsdocket.com/Docket/SearchResults.asp?T=446.)

This Court entered an order approving the Modified Plan on July 30, 2009 (the "**Modification Order**"). (Docket No. 18707.)

### 2. The Debtors' Fourth Extension Motion and Failure to Provide Notice To JCI.

On October 2, 2009, two years after expiration of the statute of limitations, over a year after the Third Extension Order was entered, and seven days before the effective date of the plan on October 6, 2009, the Debtors filed another motion to extend the deadline for service of process – this time, until 180 days after substantial consummation of the plan. (Docket No. 18952 ("**Fourth Extension Motion**") ¶ 16.) The Debtors made substantially the same arguments that they made in their prior applications for extensions, including that the fourth extension "would reduce the administrative and economic burdens" on the Debtors and potential defendants given that the Debtors "might not ultimately pursue" the actions against the defendants. (*Id.* ¶¶ 18-19.) The Debtors again represented that notice was given to parties-in-interest in accordance with the case management orders. (*Id.* ¶ 24.)

The Debtors gave no notice of the Fourth Extension Motion to JCI. (Kirtley Decl. ¶ 3.) Indeed, as with all of the previous Extension Motions, the affidavit of service for the Fourth

Extension Motion does not list JCI as having been served with the motion. (*See generally* Docket No. 18967.)

The Court granted the Fourth Extension Motion on October 22, 2009. (Docket No. 18999 (the "**Fourth Extension Order**," and together with the Procedures Order and the Second and Third Extension Orders, the "**Extention Orders**").) However, during the hearing on October 22, 2009 on the Fourth Extension Motion, the Court explicitly stated that the extension was without prejudice to the rights of the defendants in the avoidance actions to argue defenses other than statute of limitations. (October 22, 2009 Tr. at 6, attached to the JCI Motion as Exhibit D.)

**B.      The Debtors Serve the Complaint on JCI on March 24, 2010.**

On March 24, 2010, the Debtors purported to serve their five-page Complaint in the JCI Adversary Proceeding on the four JCI entities. (JCI Adv. Pro. Docket No. 12.) The Complaint asserts one cause of action against all four JCI defendants to avoid and recover 21 allegedly preferential transfers listed on Exhibit 1 attached to the Complaint. (*See id.*) Exhibit 1 lists only the date, amount, and method of each transfer; it does not specify to which JCI entity the transfer was made or which Debtor entity made the transfer. (*See id.*)

The Debtors' failure to (i) inform JCI of the existence of the avoidance claims; (ii) inform JCI of the filing of the adversary proceeding; (iii) serve notice on JCI of the various motions to extend time to serve the Complaint; and (iv) afford JCI an opportunity to object at any point to the pursuit of the avoidance claims against JCI; has caused JCI to suffer great prejudice. Because JCI did not know from 2007 to 2010 that these claims may be pursued (and indeed, even if it had known, would have been assured by the Confirmed Plan that the actions had been abandoned), JCI failed to preserve certain documentation, witness testimony, and other evidence

necessary to enable it to successfully defend against the JCI Adversary Proceeding. (Kirtley Decl. ¶¶ 4-5.)

**C.**     **Additional Service Failures on the Part of the Debtors With Respect to JCI.**

On April 23, 2010, the Court entered an Order Establishing Certain Procedures With Respect to Pending Motions to Dismiss Adversary Proceedings (the "**Motions to Dismiss Procedures Order**"). (*See* Adv. Pro. Docket No. 21.) The first paragraph of the Motions to Dismiss Procedures Order states that the order was entered "[u]pon letter request by [the Debtors] and pursuant to Fed. R. Bankr. P. 9006, and with the consent of Defendants with pending motions to dismiss, as well as certain other Defendants . . . ." The Motions to Dismiss Procedures Order was entered on the docket of the JCI Adversary Proceeding <u>despite that JCI never had any contact with the Debtors respecting the letter-request, was never served with notice, and never consented to the entry of the order as stated therein</u>. (*See* Kirtley Decl. ¶ 3.)

Additionally, JCI has only recently learned that, on March 18, 2010, the Debtors filed a Motion to Allow for Entry of Case Management Order Establishing Procedures Governing Adversary Proceedings (the "**Case Management Motion**") in certain of the adversary proceedings. (*See, e.g.*, Adv. Pro. No. 07-2198 at Docket No. 9.) Despite that the JCI Adversary Proceeding is listed in the Case Management Motion as one of many retained adversary proceedings that will purportedly be governed by the Debtors' proposed Case Management Order (*see id.* at Ex. B), <u>the Case Management Motion was never filed in the JCI Adversary Proceeding and, JCI was never given notice of the Case Management Motion</u>. (Kirtley Decl. ¶ 3.) Accordingly, because the Debtors did not serve the motion and did not even bother to file the motion in the JCI Adversary Proceeding, JCI did not have the opportunity to respond to the Case Management Motion by the objection deadline, and could have been purportedly subject to

yet another order establishing case management procedures despite never having notice or an opportunity to object thereto.

**ARGUMENT**

**I.      THE COMPLAINT IS BARRED BY RES JUDICATA.**

The Debtors' Complaint against JCI is barred by application of the principle of *res judicata*, due to the Debtors' express release of their claims against JCI in the Confirmed Plan and their failure to expressly retain them in the Modified Plan.

**A.      *Res Judicata* Prevents the Debtors From Pursuing the JCI Adversary Proceeding Because the Confirmed Plan Expressly Abandoned Claims Against JCI.**

In the Confirmed Plan, the Debtors not only failed to retain claims against JCI – they *expressly abandoned* any claims they might have had against JCI.  In Article 7.24 of the Confirmed Plan, the Debtors stated that "Causes of Action against Persons arising under section 544, 545, 547, 548, or 553 of the Bankruptcy Code or similar state laws *shall not be retained by the Reorganized Debtors unless specifically listed on Exhibit 7.24 hereto*."  (Confirmed Plan at 48 (emphasis added).)  Exhibit 7.24 to the Confirmed Plan did not contain any reference to any potential claims against JCI.  Because of the *res judicata* effect afforded to confirmation plans as explained below, the Debtors are thus barred from asserting the claims in the Complaint against JCI and the Complaint should be dismissed.

It is black-letter law that "[t]he confirmation of a bankruptcy plan of reorganization must be accorded res judicata effect . . . [and] prevents the subsequent assertion of any claim not reserved in the plan as required by § 1123(b)(3)."  *In re I. Appel Corp.*, 300 B.R. 564, 567 (Bankr. S.D.N.Y. 2003).  "[T]he general rule is that, absent an express plan provision to the contrary, the debtor loses the right to bring bankruptcy causes of action, such as to recover a

preference or for turnover, after the confirmed plan's effective date." Hon. William L. Norton, Jr. & William L. Norton III, Norton Bankruptcy Law and Practice § 109:16 (3d. ed. 2009) (citing *Int'l Asset Recovery Corp. v. Thomsom McKinnon Sec. Inc.*, 335 B.R. 520, 525 (S.D.N.Y. 2005)); *see also Sure-Snap Corp. v. State Street Bank and Trust Co.*, 948 F.2d 869, 877 (2d Cir. 1991); *D & K Props. Crystal Lake v. Mut. Life Ins. Co.*, 112 F.3d 257, 260 (7th Cir. 1997).

The Debtors must have understood this concept, because they took care to list the causes of action they intended to preserve in Exhibit 7.24 to the Confirmed Plan. Article 7.24 of the Confirmed Plan states that "Causes of Action against Persons arising under section 544, 545, 547, 548, or 553 of the Bankruptcy Code or similar state laws *shall not be retained by the reorganized Debtors unless specifically listed on Exhibit 7.24.*" (Emphasis added.) As claims against JCI were not listed on Exhibit 7.24,[3] it is clear that the Debtors did not intend to preserve those claims and abandoned them in adopting the Confirmed Plan. Accordingly, any claims the Debtors may have had against JCI prior to the entry of the Confirmed Plan were expressly disavowed by the Debtors when they stated in the Confirmed Plan that they would not retain these actions as set forth in Exhibit 7.24.

Because entry of an order confirming a bankruptcy plan is to be accorded *res judicata* effect, upon entry of the order confirming the Confirmed Plan, the Debtors lost the ability to pursue claims against JCI – claims that they themselves had waived in the first place. Accordingly, the Debtors are barred by application of *res judicata* from pursuing any causes of action other than those specifically preserved in Exhibit 7.24, including those at issue in the Complaint.

---

[3] Indeed, *no* avoidance actions other than the actions concerning the Laneko Defendants were listed in Exhibit 7.24.

14

**B.     Even if the Debtors' Amendment of Exhibit 7.24 Was Valid, the Blanket Reservation of Claims in Exhibit 7.19 is Insufficient to Preserve Debtors' Claims Against JCI.**

Even if the Court finds that the Debtors had the right to amend Exhibit 7.24, as they purported to do with the filing of Exhibit 7.19 to the Modified Plan, the Debtors have not adequately described the action against JCI (or any of the avoidance actions) with sufficient specificity so as to preserve them under the Modified Plan.

Courts have specifically held that a debtor's failure to list a cause of action in its list of retained causes of action as part of its plan of reorganization bars the debtor's post-confirmation assertion of the omitted claim, even where the plan or other order contains a general reservation of rights or claims.  For example, in *D & K Properties*, the debtor argued that it had preserved certain claims by including a statement in the confirmed plan that "all causes of action existing in favor of the Debtor" would be preserved.  112 F.3d at 260.  The Seventh Circuit disagreed, holding that the general reservation of rights clause:

> [did] not create blanket authorization to file lawsuits and reopen issues that were considered and settled, or could have been so, as part of the bankruptcy plan.  It does not give the disbursing agent . . . powers beyond those accorded by the final order, or by the law.  So it does not provide [the debtor] with the power to avoid legal bars to actions such as res judicata.

*Id.* at 262.  Likewise, in *Browning v. Levy*, 283 F.3d 761, 774-75 (6th Cir. 2002), the Sixth Circuit held that a general reservation of rights was insufficient to allow the debtor to avoid the effect of *res judicata* with respect to claims that could have been brought in the bankruptcy proceeding.  The Court explained:

> NW's blanket reservation was of little value to the bankruptcy court and the other parties to the bankruptcy proceeding because it did not enable the value of NW's claims to be taken into account in the disposition of the debtor's estate. Significantly, it neither names SSD nor states the factual basis for the reserved claims. We

> therefore conclude that NW's blanket reservation does not defeat
> the application of res judicata to its claims against SSD.

*Id.* at 775. These holdings comport with the Second Circuit's holding in *Sure-Snap Corp. v. State Street Bank and Trust Co.*, that where a claim could have been brought before a final plan of reorganization was confirmed, but was not, the confirmed plan acts under the principle of *res judicata* to preclude the debtor's assertion of the later, post-confirmation action. 948 F.2d at 877.

Exhibit 7.19, which purported to amend Exhibit 7.24, provided no information on the avoidance causes of action to be retained other than the adversary proceeding numbers for each of the avoidance actions and did not disclose the identity of the defendants in those adversary proceedings or the value of the claims. Thus, even if the creditors or the potential defendants were given notice of Exhibit 7.19 or happened to be curious about the causes of action being preserved, they would still have been unable to glean this information because all of the complaints were filed under seal. In this way, Exhibit 7.19 functioned only as a general, non-specific reservation of rights with respect to a plethora of unidentifiable claims. Moreover, neither the Amended Disclosure Statement (Docket No. 17071) nor the Modified Plan included any discussion of the Debtors' reversal of their position with respect to pursuing claims against defendants not listed on Exhibit 7.24. Rather, the Debtors provided only the general reservation of the listed causes of action, as well as an open-ended statement that the Debtors were "reserv[ing] their right to modify this list to amend, add, or remove parties or otherwise update this list." (*See* Exhibit 7.19.) Under the case law discussed above, this blanket reservation of rights and open-ended language is insufficient to specifically reserve causes of action and thus avoid the *res judicata* effect of a confirmed plan. *See Browning,* 283 F.3d at 764. Indeed, if the Debtors were permitted to reserve the right to amend Exhibit 7.24/7.19 *ad infinitum* to assert

retained causes of action, as they purported to do in Exhibit 7.19, the requirement that actions actually be listed to be retained would be rendered meaningless. This cannot be the case.

Accordingly, the Debtors' Complaint against JCI should be dismissed as barred by application of the principle of *res judicata*.

## II. THE EXTENSION ORDERS ARE VOID AS TO JCI FOR THE DEBTORS' FAILURE TO COMPLY WITH PROCEDURAL DUE PROCESS REQUIREMENTS, AND THE COMPLAINT IS THUS TIME-BARRED BY THE TWO-YEAR STATUTE OF LIMITATIONS.

The Extension Orders are void as to JCI because JCI's rights to due process were violated when the Debtors failed to give JCI notice of the various Extension Motions and an opportunity to respond.

### A. The Court is Free to Vacate the Extension Orders

As a threshold matter, the Court has the ability to vacate the Extension Orders because they are interlocutory orders rather than final orders. In order for a bankruptcy court order to be "final" within the meaning of 28 U.S.C. § 158(d), the order "must completely resolve all of the issues pertaining to a discrete claim, including issues as to the proper relief." *In re Fugazy Express, Inc.*, 982 F.2d 769, 776 (2d Cir. 1992). Because the Extension Orders did not resolve all of the disputed issues, including JCI's liability and the amount of any damages, the orders are not final and this Court is free to reconsider or modify the Extension Orders in its discretion. *See United States v. Uccio*, 940 F.2d 753, 758 (2d Cir. 1991) ("[F]or until there is a final judgment in a case, an interlocutory ruling generally remains subject to reconsideration or modification."[4]

---

[4] While it may "inform[] the court's discretion," *id*. at 758, the existence of the law of the case doctrine does not limit the court's power to modify or void an interlocutory order. Indeed, the Second Circuit has stated that where a litigant was not given notice and an opportunity to be heard, the law of the case doctrine does not foreclose a party's due process argument. *See In re Johns-Manville Corp.*, --- F.3d ---, Nos. 06-2103-bk, 06-2118-bk and 06-2186-bk, 2010 U.S. App. LEXIS 5877, at *43 (2d Cir. Mar. 22, 2010). Accordingly, there is no legal impediment to this Court's ability to modify or void the Extension Orders in its discretion.

Even if the Court were to conclude that the Extension Orders were "final," the Court would still be permitted to void the Extension Orders pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Rule 9024 of the Bankruptcy Rules. Rule 60(b)(4) authorizes a court to relieve a party from a final order if the order is void. Fed. R. Civ. P. 60(b)(4). A court must grant relief under this Rule if the order "is void because entry of the order violates due process rights." *Fustok v. Conticommodity Servs., Inc.*, 122 F.R.D. 151, 154-55 (S.D.N.Y. 1988) (citing *Textile Banking Co. v. Rentschler*, 657 F.2d 844, 850 (7th Cir. 1981)). The Court may also grant relief under Rule 60(b)(5) if "applying [the order] prospectively is no longer equitable" or under Rule 60(b)(6) if there is "any other reason that justifies relief."

**B.     This Court Should Void the Extension Orders as They Apply to JCI Because the Lack of Notice to JCI Renders the Orders Unenforceable.**

JCI respectfully submits that its fundamental procedural due process rights – particularly its right to notice and an opportunity to be heard in the JCIAdversary Proceeding – have been egregiously violated by the Debtors' failure to serve JCI with any notice of the Adversary Proceeding, the Complaint, the Extension Motions, and various other motions, and the Debtors' intentional concealment of the JCI Adversary Proceeding by arranging to seal the Complaint until 2 ½ years after the expiration of the statute of limitations.

It has long been recognized that "[t]he core of due process is the right to notice and a meaningful opportunity to be heard." *Lachance v. Erickson*, 522 U.S. 262, 266 (1998) (citing *Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 542 (1985)).

The right to be heard "has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Accordingly, if a party is not

afforded due process during the proceeding that led up to the entry of an order, the party will not be bound by that order. *See City of New York v. New York, N.H. & H. R.R. Co.*, 344 U.S. 293, 296-97 (1953) (finding that a creditor who did not receive notice of a claims bar date order was not bound by the claims bar date due to the lack of notice, even where the creditor was aware of the bankruptcy proceedings); *In re Johns-Manville Corp.*, 2010 U.S. App. LEXIS 5877, at *65-66 (finding that where a party did not receive notice of proceedings that led to the entry of certain orders that adversely affected the party, the party was not bound by those orders). This Court recently noted this precise point when, in addressing whether the unserved foreign defendants would need to seek relief from the uniform case management order proposed by the Debtors, the Court stated that "it's odd to say that they'd be bound if they're not a party to an adversary proceeding that's been . . . served yet." (April 1, 2010 Tr. at 13, attached to the JCI Motion as Exhibit E.)

The lack of notice to JCI of the Debtors' initiation of the JCI Adversary Proceeding, the filing of the Extension Motions, the Extension Orders, and the other motions and orders relevant to the Debtors' claims against JCI are nothing short of appalling from a due process perspective. The fact that JCI did not have notice of these pleadings and filings is undisputed. Nor is it disputed that JCI was denied the opportunity to respond or object to the motions despite the impact that the motions had on JCI's procedural due process rights and the resulting prejudice to JCI. Rather, JCI had every right and reason to assume that the Debtors would not be pursuing any actions against JCI given the language in Article 7.24 of the Confirmed Plan. Accordingly, JCI's procedural due process rights would be seriously violated and the purposes of Rule 4(m) rendered meaningless if the Extension Orders were permitted to stand against JCI and the JCI Adversary Proceeding were permitted to continue. *See In re Global Crossing, Ltd.*, 385 B.R. 52,

59 (Bankr. S.D.N.Y. 2008) (finding, in evaluating the applicability of Rule 4(m), that there was

"no basis in law or fairness" to extend "a statute of limitations protecting unnamed and unknown

defendants by a year and a half . . . . The Court must be wary of making the statute of limitations

a nullity"). The fact that JCI knew of the Debtors' bankruptcy proceedings is of no import here

because mere knowledge of the bankruptcy proceeding or possible existence of a claim does not

satisfy the notice requirement. *See City of New York*, 344 U.S. at 297.

Accordingly, the Extension Orders must be vacated and declared null and void with

respect to JCI. *See United Student Aid Funds, Inc. v. Espinosa*, 130 S.Ct. 1367, 1377 (2010)

(where notice and an opportunity to be heard are not provided, the order is a "legal nullity").

    **C.**    **The Complaint Should be Dismissed as Barred by the Two-Year Statute of Limitations Applicable to Avoidance Actions.**

The fact that the Extension Orders are void with respect to JCI renders the Complaint

time-barred by the two-year statute of limitations for avoidance actions.

Section 546(a) of the Bankruptcy Code lists the statute of limitations applicable to

avoidance claims. Under that section, an action or proceeding under sections 544, 547, and 548

(which form the basis for the Debtors' Complaint against JCI):

> may not be commenced after the earlier of – (1) the later of – (A) 2
> years after the entry of the order for relief; or (B) 1 year after the
> appointment or election of the first trustee under section 702, 1104,
> 1163, 1202, or 1302 of this title if such appointment or such
> election occurs before the expiration of the period specified in
> subparagraph (A); or (2) the time the case is closed or dismissed.

11 U.S.C. § 546(a).

"Limitations periods are intended to put defendants on notice of adverse claims . . . ."

*Crown Cork & Seal Co. v. Parker*, 462 U.S. 345, 352 (1983) (citations omitted). They are

essential to the fundamental procedural due process rights of a party to defend itself against a

legal action because they provide a party with notice of when a plaintiff's right to pursue a claim against that party will no longer be available. Statutes of limitation thus "promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *Order of R.R. Telegraphers v. Ry Express Agency, Inc.*, 321 U.S. 342, 348-49 (1944).

The statute of limitations applicable to the Debtors' pursuit of any avoidance actions commenced on the petition dates (October 8 and 14, 2005) and expired, at the latest, on October 13, 2007. Given that the Extension Orders are void and should be vacated as to JCI, the service extensions contained therein are also void. Moreover, there is no justification for any equitable tolling of the applicable statute of limitations. Indeed, equitable considerations require that the Complaint be dismissed due to the Debtors' failure to provide JCI with notice sufficient to make JCI aware that it was at least *possible* that claims against JCI could be asserted at a later date. Instead, the Debtors chose to roll the dice and proceed without notice to JCI because it was more important to the Debtors to preserve their business strategy (which required that JCI be unaware of the Complaint) than it was for the Debtors to properly preserve their claims against JCI. The Debtors lost that bet. While the Debtors may argue that dismissal of the Complaint would be extreme or somehow inequitable, the Debtors *brought this situation upon themselves* by choosing to keep the adversary proceedings secret in order to negotiate more favorable deals for the various debtor entities all while representing to the Court that the likelihood of pursuing the actions was minimal. The Debtors were aware of this risk; indeed, they were warned by the Court on October 22, 2009 that the extensions were granted without prejudice to the rights of the defendants to assert defenses thereto. (*See* Ex. D at 6.)

Accordingly, JCI respectfully requests that the Complaint be dismissed with prejudice as time-barred by the statute of limitations contained in 11 U.S.C. § 546(a).

## III.     THE COMPLAINT IS BARRED BY JUDICIAL ESTOPPEL.

The doctrine of judicial estoppel "prevents a party from asserting a factual position in a legal proceeding that is contrary to a position previously taken by [that party] in a prior legal proceeding." *In re Venture Mortgage Fund, L.P.*, 245 B.R. 460, 471 (Bankr. S.D.N.Y. 2000) (citation omitted), *aff'd*, 282 F.3d 185 (2d Cir. 2002). Courts have uniformly recognized that the purpose of judicial estoppel is to "protect the integrity of the judicial process . . . by prohibiting parties form deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001); *see also Rosenshein v. Kleban*, 918 F. Supp. 98, 104 (S.D.N.Y. 1996) ("Judicial estoppel is invoked … to prevent the party from playing fast and loose with the courts, and to protect the essential integrity of the judicial process.") (citation omitted). "The doctrine does not depend upon prejudice to the party invoking it." *Galerie Des Monnaies of Geneva, Ltd. v. Deutsche Bank, A.G., New York Branch (In re Galerie Des Monnaies of Geneva, Ltd)*, 55 B.R. 253, 260 (Bankr. S.D.N.Y. 1986). The Second Circuit has identified two factors that must be satisfied to invoke the doctrine of judicial estoppel: (i) the party against whom estoppel is asserted took an inconsistent position in a prior proceeding, and (ii) the first tribunal adopted the inconsistent position in some manner, such as by rendering a favorable judgment. *In re Venture Mortgage Fund, L.P.*, 245 B.R. at 472.

As discussed in detail above, the Debtors repeatedly represented to the Court (both orally and in writing) that they did not intend to pursue the avoidance actions against JCI and the other adversary defendants. The Court, in turn, accepted Debtors' position that it intended to pursue only four avoidance claims when it entered orders granting the relief sought by the Debtors in

their motions. By bringing the Complaint against JCI (and the other avoidance defendants), the Debtors now take the exact opposite position than they advanced in the prior motions which formed the basis for the Court's Extension Orders. JCI respectfully submits, pursuant to the doctrine of judicial estoppel, that the Court should not sanction the Debtors' attempt to "play fast and loose with the court" and now allow the Debtors to pursue more than 170 avoidance claims after previous representations to the Court (upon which the relief was predicated) that they intended to pursue no more than four discrete claims.

Accordingly, JCI requests that the Court exercise its discretion and apply the doctrine of judicial estoppel to prevent the Debtors from pursing their claims against JCI, which the Debtors had repeatedly indicated they would not pursue.

## IV.   THE FOREIGN ACTIONS AND THE UNDER $250,000 ACTIONS AGAINST JCI ARE BARRED AS ABANDONED.

The preference claims against the Foreign Defendant, must be dismissed as an action against a foreign entity which was abandoned by the Debtors pursuant to the First Extension Motion and the Procedures Order. Additionally, while JCI has not yet been able to uncover much detail with respect to the claims against the additional JCI defendants, JCI believes that certain of the Defendants may have received less than $250,000 in transfers, thus barring those claims as also abandoned by the Debtors.

As set forth above, in the First Extension Motion, the Debtors sought authority to abandon certain claims. The Debtors divided the claims it was seeking authority to abandon into two categories: claims it had already decided to abandon, and claims it might decide to abandon in the future. The categories it had already decided to abandon included, among other claims, (1) "any preference action against an entity if the aggregate value of transfers to or for the benefit of that entity is less than $250,000 in value" (the "**Under $250,000 Claims**"); and (2) claims

against foreign suppliers (the "**Foreign Claims**").  (*See* First Extension Motion ¶¶ 25-26.)  In contrast, there were categories where the Debtors had not yet exercised its discretion to decide to abandon claims.  For example, where a preference action was under $250,000 but against an insider or member or person associated with the SEC investigation, the Debtors reserved the right to decide at a later date to abandon such claims, after notice to the Statutory Committees. (First Extension Motion ¶ 25.)  The Debtors sought authority to abandon such claims in the future based on a procedure of giving notice to the Statutory Committees.[5]

No objections were filed to the First Extension Motion.  At the August 16, 2007 hearing on the Motion, no changes were made in the Order with respect to the categories of claims Delphi had already decided to abandon, including the Under $250,000 Claims and the Foreign Claims.  Thus, the Procedures Order maintained the differing treatment of claims, such as the Under $250,000 Claims and the Foreign Claims, which the Debtors had already decided to abandon, and the categories of claims the Debtors might, in its discretion, choose to abandon in the future.

The Debtors' intent to abandon the Under $250,000 Claims and Foreign Claims is clear. Delphi filed the First Extension Motion for authority to abandon such claims, representing that it had already exercised its business judgment and decided to abandon the Under $250,000 Claims and Foreign Claims.  The Debtors moved forward with the abandonment at the August 16, 2007 hearing on the motion and obtained entry of the Procedures Order authorizing the abandonment. *Cf. In Re Chartschlaa,* 538 F.3d 116, 123-24 (2d Cir. 2008) (intent to abandon ambiguous when motion was filed, but at hearing, trustee specifically requested court to take no action on the abandonment issue).  As a consequence of the abandonment, the Delphi estate was divested of

---

[5] "Statutory Committees" was defined in the First Extension Motion as including the Official Committee of Unsecured Creditors and the Official Committee of Equity Holders.  (*See* First Extension Motion ¶ 2.)

any interest in or control over the Under $250,000 Claims and Foreign Claims. As the court stated in *In Re Grossinger's Assocs.*:

> '[A]bandonment constitutes a divestiture of all interests in property that were property of the estate . . . Abandonment once accomplished is irrevocable, regardless of any subsequent discovery that the property had greater value than previously believed.' Abandonment under section 554 removes the property in question from the bankruptcy estate and causes the trustee to lose all interest, rights and control with respect to the abandoned property.

184 B.R. 429, 432 (Bankr. S.D.N.Y. 1995).

Accordingly, any and all claims against Johnson Controls GmbH & Co. KG, a foreign supplier as that term is used in the First Extension Motion and Procedures Order, were abandoned by the Debtors. These claims must be dismissed.

Additionally, in the Complaint against JCI, the Debtors do not specify to which Defendant each of the transfers it seeks to avoid were made. JCI has requested additional information from the Delphi estate and has not received information sufficient to identify the alleged transfers. Without a complaint which clearly identifies each transfer, it may be very possible that certain of the Defendants received less than $250,000 in the aggregate, qualifying the claims against them as Under $250,000 Claims that have been abandoned and should be dismissed.

### V.    THE COMPLAINT MUST BE DISMISSED FOR FAILURE TO PLEAD FACTS SUFFICIENT TO STATE A CLAIM FOR RELIEF.

Finally, the Debtors' Complaint against JCI does not adequately state a claim for relief under 11 U.S.C. § 547, and, therefore, must be dismissed pursuant to rule 12(b)(6) of the Federal Rules of Civil Procedure and Rule 7012(b)(6) of the Bankruptcy Rules. In *Bell Atlantic Corporation  v. Twombly*, 550 U.S. 544 (2007), the Supreme Court established the standard by

which federal courts are to determine motions to dismiss under Rule 12(b)(6). Under *Twombly*, to survive a motion to dismiss, the complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Id*. at 570. A pleading that only offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not suffice. *Id*. at 555. The Supreme Court recently elaborated on its holding in *Twombly*, stating that "Threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hyper-technical, codepleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009) (emphasis added; internal citations to *Twombly* and corresponding quotation marks omitted).

In *Angell v. Haven (In re Careamerica)*, 409 B.R. 346 (Bankr. E.D.N.C. 2009), the bankruptcy court applied the Supreme Court's holding in *Twombly* to a preference action. The defendant filed a motion to dismiss the trustee's claims to avoid alleged preferential and fraudulent transfers. The bankruptcy court concluded that, based on the Supreme Court's holdings in *Twombly*, the trustee's complaint must plead sufficient factual allegations to establish that a preference cause of action is plausible. *Id*. at 350. The bankruptcy court then analyzed each element of the preference statute to determine if sufficient factual allegations were pleaded. The bankruptcy court held that the trustee's complaint did not contain sufficient factual allegations to show it was plausible that a transfer of an interest of the debtor in property had occurred because the complaint failed to identify which of the debtors made the alleged transfers. *Id*. Moreover, the bankruptcy court held that the trustee's complaint did not contain sufficient factual allegations to show it was plausible that the alleged transfers were made on account of an

antecedent debt. *Id.* at 351. The bankruptcy court explained that "the trustee must assert the nature and amount of the antecedent debt in order to allege a plausible claim for relief." *Id.* The trustee's complaint merely recited the statutory element that the transfer was made "for, or on account of, an antecedent debt owed by the Debtors to the Defendant before the transfers were made." *Id.* The complaint lacked any facts showing the existence of an antecedent debt. The bankruptcy court explained that in order to satisfy the pleading requirements under *Twombly* "the trustee must allege facts regarding the nature and amount of the antecedent debt which, if true, would render plausible the assertion that a transfer was made for or on account of such antecedent debt." *Id.*

Like the complaint at issue in *Careamerica*, the Complaint in the instant case (attached to the JCI Motion as Exhibit A) does not contain sufficient factual matter to state a claim for relief under Section 547 that is plausible on its face. The Complaint contains nothing more than a formulaic recitation of the elements of a claim for relief under 11 U.S.C. § 547, and contains no factual allegations other than a list of alleged transfers contained in Exhibit 1 to the Complaint. First, the Debtors do not allege that they actually made the alleged transfers listed on Exhibit 1. Instead, the Debtors allege that they "made, or caused to be made," the alleged transfers. (Compl. ¶¶ 10, 12-13.) Second, like the complaint dismissed by the court in *Careamerica*, the Complaint here does not identify the Debtor(s) that are alleged to have made the transfers listed on Exhibit 1. Instead, the Complaint alleges that the alleged transfers were made by "Plaintiffs" which are defined to include "all of the Debtors in the above-captioned chapter 11 cases." (*Id.* at 2 & n.1.) Third, the Complaint does not identify the recipient of any alleged transfer. The Complaint names four different entities that allegedly received transfers but fails to identify the transfers allegedly received by each such entity. (*Id.* ¶ 3.) Moreover, the Complaint alleges that

the transfers were made "to, or for the benefit of Defendants" leaving open the possibility that the transfers were made to some unidentified third party. (*Id.* ¶ 12.) Finally, like the trustee's complaint in *Careamerica*, the Complaint in the instant case does not allege any facts regarding the nature or amount of the antecedent debt.

Because the Complaint is woefully insufficient under *Iqbal, Twombly*, and *Careamerica*, the Court should dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and Rule 7012(b)(6) of the Bankruptcy Rules.

## VI.   IN THE ALTERNATIVE, DEBTORS SHOULD BE REQUIRED TO FILE A MORE DEFINITE STATEMENT

In any event, to the extent the Court concludes that the Complaint should not be dismissed under *Iqbal* and *Twombly*, JCI respectfully requests that the Court order the Debtors, pursuant to Fed. R. Civ. P. 12(e), to file a more definite statement, addressing the deficiencies outlined above.

## VII.   THE JCI DEFENDANTS INCORPORATE ALL APPLICABLE ARGUMENTS RAISED BY OTHER DEFENDANTS IN THEIR DISMISSAL MOTIONS.

Numerous other motions have been filed by the defendants in the various avoidance actions. These motions seek the dismissal of the avoidance complaints on various legal grounds. Because the facts surrounding those actions are, in many respects, similar to those found here, JCI incorporates all applicable arguments raised by the other adversary proceeding defendants in their motions to the dismiss the adversary complaints applicable to them.

## CONCLUSION

For the reasons set forth herein, Defendants respectfully request that this Court enter an Order (i) vacating certain prior orders of the Court; (ii) dismissing the Complaint in its entirety with prejudice on the grounds that it is barred by (1) the two-year statute of limitations imposed

28

by 11 U.S.C. § 546(a); (2) Fed. R. Civ. P. 12(b)(6) and Fed. R. Bankr. P. 7012(b)(6) for failure to state a claim; and/or (3) the doctrines of *res judicata* and judicial estoppel; (iii) in the alternative, dismissing the Complaint with prejudice as to Johnson Controls GmbH & Co. KG as the holder of an abandoned foreign claim; (iv) in the alternative, requiring the Debtors to file a more definite statement pursuant to Fed. R. Civ. P. 12(e), addressing the deficiencies in the Complaint; and (v) for such other and further relief as this Court deems proper and just.

Dated:  May 13, 2010

Respectfully submitted,

BARNES & THORNBURG LLP

By:     /s/Kathleen L. Matsoukas
       Deborah L. Thorne (admitted *pro hac vice*)
       Kathleen L. Matsoukas (KL-1821)
       One North Wacker Drive, Suite 4400
       Chicago, Illinois 60606-2833
       Telephone:  (312) 357-1313

Counsel to Johnson Controls, Johnson Controls Battery Group, and Johnson Controls, Inc.

       Roger A. Lewis (*pro hac vice* pending)
       Jeremy M. Downs (*pro hac vice* pending)
       GOLDBERG KOHN LTD.
       55 East Monroe Street, Suite 3300
       Chicago, Illinois 60603
       Telephone:  (312) 201-4000

Counsel to Johnson Controls, Johnson Controls GMBH & Co. KG and Johnson Controls, Inc.