BARNES & THORNBURG LLP
One North Wacker Drive, Suite 4400
Chicago, Illinois 60606
Telephone: (312) 357-1313
Facsimile: (312) 759-5646

Deborah L. Thorne (admitted *pro hac vice*)
Kathleen L. Matsoukas (KL-1821)
Email: deborah.thorne@btlaw.com
 kathleen.matsoukas@btlaw.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| DELPHI CORPORATION, *et al.*, | No. 05-44481 (RDD) |
| Reorganized Debtors. | Jointly Administered |
| DELPHI CORPORATION, *et al.* | |
| Plaintiffs, | Adv. Pro. No. 07-2348 (RDD) |
| -against- | |
| JOHNSON CONTROLS, JOHNSON CONTROLS BATTERY GROUP, JOHNSON CONTROLS GMBH & CO. KG and JOHNSON CONTROLS, INC. | |
| Defendants. | |

**REPLY AND JOINDER IN FURTHER SUPPORT OF MOTION OF JOHNSON CONTROLS, JOHNSON CONTROLS BATTERY GROUP, JOHNSON CONTROLS GMBH & CO. KG AND JOHNSON CONTROLS, INC. TO: (A) VACATE CERTAIN PRIOR ORDERS OF THE COURT; (B) DISMISS THE COMPLAINT WITH PREJUDICE; OR (C) IN THE ALTERNATIVE, TO DISMISS THE CLAIMS AGAINST CERTAIN DEFENDANTS NAMED IN THE COMPLAINT AND TO REQUIRE <u>PLAINTIFFS TO FILE A MORE DEFINITE STATEMENT</u>**

Defendants Johnson Controls, Johnson Controls Battery Group, Johnson Controls GmbH & Co. KG and Johnson Controls, Inc. (each a "Defendant," and collectively "JCI"), by their undersigned counsel, in further support of their motion to (A) Vacate Certain Prior Orders of the Court; (B) Dismiss the Complaint with Prejudice; or (C) In the Alternative, to Dismiss the Claims Against Certain Defendants Named in the Complaint and to Require Plaintiffs to File a More Definite Statement (the "JCI Motion"), respectfully state as follows:

## PRELIMINARY STATEMENT

As the Court is aware, this is a very well-known and public bankruptcy case that has impacted virtually every player in the domestic automobile industry. As such, the Debtors' proposal of a plan of reorganization in 2007 was much-anticipated, closely-reviewed and relied upon by creditors. In that plan, which was ultimately confirmed by the Court despite being later modified, the Debtors specifically abandoned all of their claims under 11 U.S.C. §§ 544, 545, 547, 548 or 553 not specifically listed as part of Exhibit 7.24 of the Confirmed Plan, and, in doing so, forfeited the chance to proceed on the complaint against JCI, which is now barred according to the principles of abandonment, *res judicata*, and judicial estoppel. The entry of the Modified Plan, which modified certain portions of the Confirmed Plan, did not and could not have revoked the prior abandonment.

Debtors, in their Response to the various motions to dismiss of JCI and other defendants (the "Response"), continue to assert that their prosecution and preservation of these actions was procedurally and legally adequate, despite myriad procedural and substantive deficiencies identified by the many defendants. Among other things, in the Response, the Debtors fail to recognize their own abandonment of claims against JCI in the Confirmed Plan, fail to meaningfully contest the *res judicata* effect of the Confirmed Plan, and fail to acknowledge that they were warned by this Court that the extensions of time granted to Debtors to serve the

adversary complaints were without prejudice to the rights of the defendants in the avoidance actions to argue defenses other than statute of limitations. (*See* Oct. 22, 2009 Tr. at 6, attached to the JCI Motion as <u>Exhibit D</u> (stating that the orders were granted "without prejudice to the rights of these potential defendants to argue other defenses").)

The Debtors took the calculated risk of keeping these actions a secret from the defendants in the hopes that they would not have to pursue them and could instead negotiate favorable business deals with various parties, including JCI, while increasing their chances of confirming a plan of reorganization. This is not a case in which certain exigencies prohibited the retention of claims or in which the actions were filed post-confirmation. Rather, here, the Debtors knew of claims but chose to keep them a secret prior to service of the Complaint[1] in this action in March of 2010. As a result, JCI received <u>no</u> notice that the Debtors had initiated an action against JCI or that JCI might be subject to the Debtors' assertion of post-confirmation avoidance claims on transfers that were made in mid- to late-2005 until well after the claims had already been abandoned and a plan confirmed. The Debtors may not now proceed on claims that have been abandoned for years, no matter what the justification.

Accordingly, in addition to joining the reply briefs filed by other defendants, JCI files this memorandum in order to respond to certain arguments raised by the Debtors.

**ARGUMENT**

**I. THE COMPLAINT IS BARRED AS THE DEBTORS EXPRESSLY ABANDONED THEIR CLAIMS AGAINST JCI.**

In their response, the Debtors acknowledge that they sought and obtained authority to abandon claims, including their claims against JCI, under their August 6, 2007 motion requesting

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the JCI Motion.

procedures relating to the preservation of estate claims (Doc. No. 8905) ("Claims Preservation Motion"). In the Debtors' Claims Preservation Motion, the Debtors requested that they be permitted to abandon claims under the following procedure:

> *Additional Authority For Abandonment After Notice To Statutory Committees.* The Debtors seek authority to abandon, after notice to the Statutory Committees, and without further order of this Court or further notice under Bankruptcy Rule 6007, claims (i) with insignificant value, (ii) where litigation costs would likely exceed expected recovery, (iii) where the potential harm to businesses outweighs expected recovery, or (iv) where valid defenses exist. If a Statutory Committee objects within 10 days after service of the notice, the Debtors may bring the matter before this Court for a ruling on whether the proposed abandonment satisfies section 554(a) of the Bankruptcy Code.

(Claims Preservation Motion ¶ 17.)

On August 16, 2007, this Court entered an order approving the Claims Preservation Motion (Doc. No. 9105) ("Claims Preservation Order") which permitted the Debtors to abandon claims without the need of any further court order or notice.[2] (Claims Preservation Order ¶ 5.)

In the Debtors' First Amended Disclosure Statement (Doc. No. 11388), the Debtors stated that they would not be pursuing certain claims because pursuing such claims would be of no value to the Debtors, stating:

> Because of the Plan's treatment of unsecured creditors, the Debtors have determined that the affirmative pursuit of many if not all of these causes of action would not benefit their estates and creditors. As described in this Disclosure Statement, the Plan will pay or satisfy all allowed claims in full through distributions of common stock. As a result, avoiding preferential transfers though causes of action under section 547 of the Bankruptcy Code or similar state laws ("Preference Claims") would provide little or no benefit to the Debtors' Estates because any party returning such a transfer would

---

[2] "With the exception of the notice and opportunity for a hearing provided in the next sentence. The Debtors may abandon such additional cause of action after giving 10 days' notice thereof to the Statutory Committees; if a Statutory Committee objects within 10 days after service of the notice, the Debtors may bring the matter before this Court for a ruling on whether the proposed abandonment satisfies section 554(a) of the Bankruptcy Code." (Claims Preservation Order ¶ 5.)

3

be entitled to an unsecured claim for the same amount, to be paid or satisfied in full under the Plan. For the same reasons, avoiding statutory liens under section 545 of the Bankruptcy Code or prepetition setoffs under section 553 of the Bankruptcy Code would provide little or no benefit to the Estates. In addition, under the Plan the Reorganized Debtors will not retain the Preference Claims except those specifically listed on Exhibit 7.24 to the Plan.

(First Amended Disclosure Statement at DS149.)

In Sections 7.24 and 7.25 of the Debtors' First Amended Joint Plan of Reorganization (Doc. No. 11386) ("Confirmed Plan"), which was confirmed by the Court on January 25, 2008 (Doc. No. 12359) ("Order of Confirmation"), the Debtors expressly stated that they were abandoning all causes of action except for certain causes of action specifically listed on Exhibit 7.24:

> 7.24 **Preservation Of Causes of Action.** In accordance with section 1123(b)(3) of the Bankruptcy Code and except as otherwise provided in this Plan, the Reorganized Debtors shall retain and may (but are not required to) enforce all Retained Actions and all other similar claims arising under applicable state laws, including, without limitation, fraudulent transfer claims, if any, and all other Causes of Action of a trustee and debtor-in-possession under the Bankruptcy Code. The Debtors or the Reorganized Debtors, in their sole and absolute discretion, shall determine whether to bring, settle, release, compromise, or enforce such Retained Actions (or decline to do any of the foregoing), and shall not be required to seek further approval of the Bankruptcy Court for such action. The Reorganized Debtors or any successors may pursue such litigation claims in accordance with the best interest of the Reorganized Debtors or any successors holding such rights of action. **Notwithstanding the foregoing, Causes of Action against Persons arising under section 544, 545, 547, 548, or 553 of the Bankruptcy Code or similar state laws shall not be retained by the Reorganized Debtors unless specifically listed on <u>Exhibit 7.24</u> hereto.** [Emphasis added.]
>
> 7.25 **Reservation Of Rights.** With respect to any avoidance causes of action under section 544, 545, 547, 548, or 553 of the Bankruptcy Code **that the Debtors abandon in accordance with <u>Article 7.24</u> of this Plan**, the Debtors reserve the rights, including the right under section 502(d) of the Bankruptcy Code to use defensively the abandoned avoidance cause of action as a ground

4

>to object to all or any part of a claim against any Estate asserted by a creditor which remains in possession of, or otherwise obtains the benefit of, the avoidable transfer. [Emphasis added.]

(Confirmed Plan at §§ 7.24, 7.25.) All Statutory Committees were given more than 10 days' notice of the abandonment of claims set forth in the Confirmed Plan, as provided for in the Claims Preservation Order, and a review of the Docket does not reveal any objection to the abandonment set forth in the Confirmed Plan. Therefore, under the terms of the Confirmed Plan and Claims Preservation Order, all causes of action not specifically listed on Exhibit 7.24 were abandoned under 11 U.S.C. § 554(a).

Based upon the language of the Claims Preservation Motion, the Claims Preservation Order, and the Confirmed Plan set forth above, the Debtors clearly and unequivocally abandoned all claims which it had under 11 U.S.C. §§ 544, 545, 547, 548 or 553 except for those specifically listed on Exhibit 7.24 of the Plan. The abandoned claims include the Debtors' claims against JCI. As noted by the Second Circuit in *Chartschlaa v. Nationwide Mutual Insurance Company (In re Chartschlaa)*, 538 F.3d 116, 123 (2d Cir. 2008), "[o]nce an asset is abandoned, it is removed from the bankruptcy estate, and this removal is irrevocable except in very limited circumstances." As these claims were fully disclosed by the Debtors, none of the limited circumstances which would allow revocation of the Debtors' abandonment of these claims apply. *Id.* at 123-24. Further, "[t]he effect of abandonment is to remove the asset from the jurisdiction of the bankruptcy court." *In re Sherrell*, 205 B.R. 20, 22 (N.D.N.Y. 1997) (quoting *In re Helms*, 1991 WL 284111 (E.D. La. 1991). In this case, the abandonment of the Debtors' claims against JCI under the Confirmed Plan irrevocably removed those claims from the Debtors Bankruptcy Estates and they can no longer be asserted against JCI as a matter of law.

The Debtors' arguments that they have not abandoned claims which were not specifically listed in Exhibit 7.24 are without legal or factual support. The only factual basis the Debtors

5

provide for the position that the claims were not abandoned is their motions to extend the time for serving these claims, which are irrelevant here. The Debtors' post-confirmation and post-abandonment efforts have no bearing on the issue of whether the Debtors actually abandoned claims not specifically listed in Exhibit 7.24 of the Confirmed Plan.

To the extent the Court would find that the post-confirmation extension motions are relevant, the February 28, 2008 motion (Doc. No. 12922) to extend the deadline to serve process ("Second Extensions Motion") and the April 10, 2008 motion (Doc. No. 13361) to extend ("Third Extension Motion") both support JCI's position.

In both the Second[3] and Third[4] Extension Motions, the Debtors made an express factual representation to the Court that the only claims that were subject to the Preservation of Estate Claims Order were the claims of Laneko Engineering Co., Wachovia Bank, N.A. and Laneko Engineering Co., Inc. Based on these direct and unequivalent factual assertions of the Debtors it is clear that the Debtors did not retain any claims against JCI and the other defendants and instead abandoned those claims under their Confirmed Plan.

The only arguments the Debtors raise against the clear, affirmative factual representations they made to this Court, are found in paragraph 89 of the Response. (*See* Resp. at 38.) There, the Debtors cryptically state that the representations they made in the Second and Third Extension Motions and before the Court at the hearings on those motions were "misstatements"

---

[3] "Of the five categories of claims listed by the Debtors on Exhibit 7.24 to the Plan, only the claims relating to Laneko Engineering Co., Wachovia Bank, National Association, Laneko Engineering Co., Inc., and their affiliates and subsidiaries were subject to the Preservation of Estate Claims Procedures Order." Second Extension Motion at para 17, n.4.

[4] "Of the five categories of claims listed by the Debtors on Exhibit 7.24 to the Plan, only the claims relating to Laneko Engineering Co., Wachovia Bank, National Association, Laneko Engineering Co., Inc., and their affiliates and subsidiaries were subject to the Preservation of Estate Claims Procedures Order. (See Exhibit 7.24 to the Plan(Docket No. 11608).) Notice of this Motion has been provided to those entities." Third Extension Motion at para 18, n.4.

6

and that the Court did not rely upon these statements. (*Id.*) The Debtors fail to provide any detail or support for their after-the-fact contention that the Debtors' representations to this Court in these pleadings were misstatements. Further, they offer no explanation as to why these material misstatements were never corrected in this case. *See Grubin v. Rattet (In re Food Management Group, LLC)*, 380 B.R. 677, 710 (Bankr. S.D.N.Y. 2008) (holding that counsel for debtors have a fiduciary duty "to correct any misstatements or material omissions they subsequently discovered"). In this case, under the facts the Debtors have presented, the Debtors and their counsel have known since at the latest April of 2008 when they did not obtain funding for their Confirmed Plan that the representations in the Second and Third Extension Motions were incorrect and yet took no action to correct these "misstatements." Therefore this argument should be rejected.

The Debtors' legal arguments are equally without merit. The only cases the Debtors cite in their Response are inapplicable to the facts before this Court as they either involve a "technical" abandonment under § 554(c), such as where a case was closed without administering estate property, or where a proposed abandonment under 11 U.S.C. § 554(a) was not approved. *See Ayazi v. New York City Bd. of Educ.*, 315 Fed. Appx. 313 (2d Cir. 2009) (§ 554(c) preconditions not met); *In re Chartschlaa*, 538 F.3d at 121 (trustee withdrew motion to abandon before it was approved); *Fedorov v. Peter T. Roach and Assocs., P.C.*, 354 F. Supp. 2d 471 (S.D.N.Y. 2005) (lawsuit abandoned because bankruptcy closed without administering it).

In stark contrast, in this case the Debtors specifically provided for the abandonment of claims by both the Claims Preservation Motion and the Plan, which were approved by Court order. Therefore, the Debtors' abandonment of all claims which it had under 11 U.S.C. §§ 544,

7

545, 547, 548 or 553, including its claims against JCI, was completely effective and irrevocable upon the entry of the Order of Confirmation. Accordingly, the Complaint should be dismissed.

The Modified Plan and the related Modification Order do not change this result. Under the Modified Plan the Debtors do not even attempt to revoke or modify the abandonment of the claims provided for in the Confirmation Order. Paragraph A of the July 30, 2009 Order approving modifications to the Confirmed Plan (Doc. No. 18707) ("Modification Order"), expressly provides that the original Confirmation Order was not "revoked, withdrawn or vacated and remains in full force and effect, except as may be modified by this order." The Court also held in paragraph A that two complaints which sought to revoke the original Confirmation Order were deemed to have been withdrawn. (*Id.*)

Neither the Modification Order nor the Modified Plan even attempt to rescind or revoke the Debtors abandonment of the claims asserted against JCI and other Defendants under the Confirmed Plan. Indeed Paragraph 17 of the Modification and Section 11.1 of the Modified Plan both provide:

> Except as otherwise explicitly provided in this Plan, on the Effective Date, all property comprising the Estates (including Retained actions and Retained Assets, *but excluding property that has been abandoned pursuant to an order of the Bankruptcy Court* or are the subject of any of the Disposition Transactions) shall revest in each of the Reorganized Debtors which, as Debtors, owned such property or interest in property as of the Effective Date, free and clear of all Claims, liens, charges, encumbrances, rights, and Interests of creditors and equity security holders.

(Modified Plan § 11.1 (emphasis added).) Accordingly, because the Debtors irrevocably abandoned their claims against the JCI defendants, the Complaint should be dismissed in its entirety.

## II. THE COMPLAINT AGAINST JCI IS BARRED BY RES JUDICATA.

The Debtors' Response to JCI's claims that the Complaint is barred by *res judicata* all but ignores the fact that the claims against JCI were expressly released in the Confirmed Plan because the Debtors cannot contest the release of these claims. Instead, without even mentioning the Confirmed Plan, the Debtors assert that the *res judicata* arguments fail because the claims against the Movants, including JCI, were "expressly retained in the Disclosure Statement and Modified Plan." (Resp. at 32.) As set forth below and in JCI's initial memorandum in support of the JCI Motion, the Debtors' contention that they adequately retained these actions in either the Confirmed Plan or the Modified Plan is simply erroneous as a matter of law. Because of Debtors' failure to retain potential claims against JCI, the complaint against JCI should be dismissed.

### A. The Debtors Expressly Did Not Retain Claims Against JCI Under the Confirmed Plan.

In the Confirmed Plan, the Debtors not only expressly abandoned their claims against JCI – they also *expressly* stated they were not retaining any claims they might have had against JCI.

In Article 7.24 of the Confirmed Plan, the Debtors stated that "Causes of Action against Persons arising under section 544, 545, 547, 548, or 553 of the Bankruptcy Code or similar state laws *shall not be retained by the Reorganized Debtors unless specifically listed on Exhibit 7.24 hereto.*" (Confirmed Plan at 48 (emphasis added).) It is undisputed that Exhibit 7.24 to the Confirmed Plan did not contain any reference to any potential claims against JCI. Because of the *res judicata* effect afforded to confirmation plans, the Debtors are thus barred from asserting the claims in the Complaint against JCI and the Complaint should be dismissed. *See Katz v. I.A. Alliance Corp. (In re I. Appel Corp.)*, 300 B.R. 564, 567 (S.D.N.Y. 2003) (stating that "[t]he

9

confirmation of a bankruptcy plan of reorganization must be accorded res judicata effect . . . [and] prevents the subsequent assertion of any claim not preserved in the plan as required by § 1123(b)(3)") (citing *D & K Props. Crystal Lake v. Mut. Life Ins. Co. of New York*, 112 F.3d 257, 259 (7th Cir. 1997) (explaining that "confirmed plans of reorganization are binding on all parties, and issues that could have been raised pertaining to such plans are barred by res judicata")); *Heritage Hotel L.P. v. Valley Bank of Nevada (In re Heritage Hotel P'ship I)*, 160 B.R. 374, 377 (B.A.P. 9th Cir. 1993) ("It is now well-settled that a bankruptcy court's confirmation order is a binding, final order, accorded full *res judicata* effect and precludes the raising of issues which could or should have been raised during the pendency of the case . . . ."); *Cohen v. TIC Fin. Sys. (In re Ampace Corp.)*, 279 B.R. 145, 155 (Bankr. D. Del. 2002) (holding that "[t]he Confirmation Order constitutes a final judgment on the merits with respect to all issues addressed in the Plan" for purposes of *res judicata*); *see also* 11 U.S.C. § 1141(a) ("the provisions of a confirmed plan bind the debtor . . . .").

The Debtors do not dispute the *res judicata* effect of a confirmed plan nor that claims against JCI were expressly released in the Confirmed Plan. Rather, the Debtors' only response to this argument is contained in a footnote in which they assert that the Debtors *didn't actually mean* what they said on page 48 of the Confirmed Plan; rather, they *meant* that the Debtors' release of any cause of action against JCI was "contingent upon the Debtors' emergence from chapter 11 under the [Confirmed] Plan." (Resp. Br. at 38, n.11.) The Debtors base this argument on statements made to the Court *outside of the Confirmed Plan*, in the First Extension Motion and the Second Extension Motion. (*See id.*) This convenient, legally-irrelevant argument fails. The law does not make an exception for the *res judicata* effect of a plan of reorganization if the plan is not consummated. The *res judicata* effect of a plan is contingent

10

only on its confirmation. *See* 11 U.S.C. § 1141(a) ("the provisions of a confirmed plan bind the debtor . . . ."); *In re I. Appel Corp.*, 300 B.R. at 567; *D & K Props.*, 112 F.3d at 259; *In re Heritage Hotel P'ship I*, 160 B.R. at 377.

Because claims against JCI were not listed on Exhibit 7.24, the Debtors expressly provided that it was not retaining them in adopting the Confirmed Plan, triggering the application of *res judicata* and preventing the assertion of claims against JCI here.[5]

### B. The Modified Plan Failed to Preserve Claims Against JCI.

Even assuming *arguendo* that the Confirmed Plan should not be given preclusive, *res judicata* effect, the Debtors' failure to adequately disclose the action against JCI (or any of the avoidance actions) in the Modified Plan requires dismissal here.

As detailed in JCI's Motion, courts have held that a debtor's failure to *specifically* preserve a cause of action as part of its plan of reorganization bars the debtor's post-confirmation assertion of the omitted claim, even where the plan or other order contains a general reservation of rights or claims. *See D & K Props.*, 112 F.3d at 260; *Browning v. Levy*, 283 F.3d 761, 774-75 (6th Cir. 2002) (holding that a general reservation of rights to pursue all actions "does not suffice to avoid res judicata."); *Kelley v. South Bay Bank (In re Kelley)*, 199 B.R. 698, 704 (B.A.P. 9th Cir. 1996) ("[e]ven a blanket reservation by the debtor reserving 'all causes of action which the debtor may choose to institute' has been held insufficient to prevent the application of res judicata to a specific action.") (citation omitted); *see also Mickey's Enter., Inc. v. Saturday Sales, Inc. (In re Mickey's Enter., Inc.)*, 165 B.R. 188, 192 (Bankr. W.D. Tex. 1994). The rationale of these decisions is that specific disclosures are required by Sections 1123 and 1125 of the Bankruptcy Code, which, taken together, require that the Debtors make "adequate disclosures" in

---

[5] As discussed in the JCI Motion and the briefs of the other Defendants in which JCI joins, the doctrine of judicial estoppel also applies to prevent the Debtors from pursing their claims against JCI, which the Debtors had repeatedly stated that they would not pursue, for the same reasons stated above.

11

connection with the intended retention of claims or interests. *See* 11 U.S.C. §§ 1123(b)(3)(B), 1125.

The Debtors admit that the Modified Plan did not mention JCI by name (*see* Resp. at 33), but nevertheless argue that the general reservation of rights in Exhibit 7.19 to the Modified Plan suffices to put JCI on notice of the claims against it and avoid *res judicata* effect (Resp. at 32-33.). In making this argument, the Debtors rely heavily on the decision in *In re Ampace Corp. Ampace* is, however, distinguishable and inapplicable for a number of reasons. First, in *Ampace*, the court relied on cases in which the debtors *had* specified in the plan "those particular defendants of which they were aware at the time." *In re Ampace Corp.*, 279 B.R. at 159. In *Ampace*, the plan was confirmed in December 1999, only a year after the filing of the petition in December of 1998, and the avoidance action at issue in *Ampace* was not commenced until December of 2000, one year *after* confirmation. *Id.* at 147-50. Accordingly, it is likely that the claim at issue in *Ampace* was unknown at the time the plan was confirmed. In this case, the Debtors *were aware* of the potential claims and defendants, *but deliberately chose not to* list them, choosing instead to deliberately keep the defendants' identities a secret by listing only the numbers of the sealed adversary proceedings. (*See* Modified Plan at Ex. 7.24.) Second, the *Ampace* court based its holding in large part on the fact that listing all unknown, potential causes of action is impractical given the exigency of the confirmation process. *See In re Ampace Corp.*, 279 B.R. at 159. Again, ; *see also In re I. Appel*, 300 B.R. at 569 ("It is neither reasonable nor practical to expect a debtor to identify in its plan of reorganization or disclosure schedules every outstanding claim it intends to pursue with the degree of specificity that the [movant] would require."). Unlike in *Ampace and Appel*,[6] such a concern is simply not present here, given the

---

[6] In *Appel*, the petition was filed in April 1997, and the plan was confirmed in May 1998. The action at issue in *Appel* was a motion by the Debtors to reopen the bankruptcy in December 2002 to assign certain omitted claims, an

length of time between petition and plan confirmation in this case, and, more importantly, given that the Debtors *knew* of the pending preference actions and simply chose not to list them with specificity as a *tactical matter.* Finally, the *Ampace* court admitted that "[t]he courts are divided on how specific the language of retention and enforcement must be under § 1123(b)(3)(B) to adequately reserve a cause of action for adjudication at a later date" and that many courts "hold that *res judicata* bars a subsequent action unless the debtor's disclosure statement and/or plan specifically reserves the right to litigate that specific claim." *See In re Ampace Corp.*, 279 B.R. at 157-58. JCI submits that the rationale of *Ampace* and the other cases cited by the Debtors which rely on *Ampace* is not precedential, does not comport with the requirements of the Bankruptcy Code and should not be followed.[7]

It is clear that Debtors themselves did not rely on the cases they cite at the time Debtors crafted the Confirmed Plan or Modified Plan; otherwise, they would have included only a general reservation of rights to pursue all preference actions in the two Plans. Debtors did not do this. Instead, because they were aware of the requirement that claims be preserved with specificity, Debtors earmarked certain claims for preservation in the Confirmed Plan (which did not include claims against JCI), and specified in the Modified Plan those secretly-filed actions they intended to preserve. The problem with this method of preservation in the Modified Plan is that the listing of case numbers in Exhibit 7.19, which purported to amend Exhibit 7.24, provided no information on the avoidance causes of action to be retained other than the adversary proceeding numbers for each of the avoidance actions and *purposefully* did not disclose the

---

action which could not and would not have been commenced pre-confirmation. *See In re Appel Corp.*, 300 B.R. at 565-66.

[7] The case of *P.A. Bergner & Co. v. Bank One (Matter of P.A. Bergner & Co.)*, 140 F.3d 1111, 1117 (7th Cir. 1998), is also inapposite. In that case, it was clear that the defendants of certain claims were aware of the potential for continued prosecution, as the Debtor "had been prosecuting the present action against [defendant] for over fourteen months."

13

identities of the defendants or the value of the claims, despite that this information was known to Debtors at the time.  Debtors instead *chose* to keep the claims a secret while simultaneously urging creditors (including preference defendants against whom actions had already been filed) to vote for the Plan.  These methods are clearly at odds with the Bankruptcy Code, which encourages "adequate disclosures" and transparency.  *See* 11 U.S.C. §§ 1123(b)(3)(B), 1125; *see also Dynasty Oil & Gas, LLC v. Citizens Bank (In re United Operating, LLC)*, 540 F.3d 351, 355 (5th Cir. 2008) (holding that under Section 1123(b)(3), reservations of claims must be "specific and unequivocal") (citing *Harstad v. First Am. Bank*, 39 F.3d 898, 902 (8th Cir. 1994)).  Accordingly, the information provided by Debtors was no better than a general reservation of rights and was thus insufficient to preserve the Debtors' claims against JCI.  *See D & K Props.*, 112 F.3d at 260; *Browning*, 283 F.3d at 774-75; *In re Kelley*, 199 B.R. at 704.

Under the case law discussed above, a blanket reservation of rights that does not give adequate notice to potential defendants is insufficient to specifically reserve causes of action and thus avoid the *res judicata* effect of a confirmed plan.  Accordingly, the Debtors' Complaint against JCI should be dismissed in its entirety.

**III.  THE JCI DEFENDANTS INCORPORATE ALL APPLICABLE ARGUMENTS RAISED BY OTHER DEFENDANTS IN THEIR DISMISSAL MOTIONS AND JOIN IN THE BRIEFS OF OTHER DEFENDANTS IN FURTHER SUPPORT OF THE MOTIONS.**

Numerous other motions and memoranda in support have been filed by the defendants in the various avoidance actions.  These motions seek the dismissal of the avoidance complaints on various legal grounds.  Because the facts surrounding those actions are, in many respects, similar to those found in JCI's Motion, JCI incorporates all applicable arguments raised by all other adversary proceeding defendants in their motions to the dismiss the adversary complaints applicable to them and joins in any and all memoranda in further support of the motions.

## CONCLUSION

For the reasons set forth herein, in JCI's initial memorandum in support of the Motion, and in the memoranda submitted by other defendants, JCI respectfully requests that this Court enter an Order (i) vacating certain prior orders of the Court; (ii) dismissing the Complaint in its entirety with prejudice on the grounds that it is barred by (1) the two-year statute of limitations imposed by 11 U.S.C. § 546(a); (2) Fed. R. Civ. P. 12(b)(6) and Fed. R. Bankr. P. 7012(b)(6) for failure to state a claim; and/or (3) the doctrines of *res judicata* and judicial estoppel; (iii) in the alternative, dismissing the Complaint with prejudice as to Johnson Controls GmbH & Co. KG as the holder of an abandoned foreign claim; (iv) in the alternative, requiring the Debtors to file a more definite statement pursuant to Fed. R. Civ. P. 12(e), addressing the deficiencies in the Complaint; and (v) for such other and further relief as this Court deems proper and just.

Dated: July 1, 2010

Respectfully submitted,

BARNES & THORNBURG LLP

By:   /s/Kathleen L. Matsoukas
    Deborah L. Thorne (admitted *pro hac vice*)
    Kathleen L. Matsoukas (KL-1821)
    One North Wacker Drive, Suite 4400
    Chicago, Illinois 60606-2833
    Telephone: (312) 357-1313

Counsel to Johnson Controls, Johnson Controls Battery Group, and Johnson Controls, Inc.

    Roger A. Lewis (*pro hac vice* pending)
    Jeremy M. Downs (*pro hac vice* pending)
    GOLDBERG KOHN LTD.
    55 East Monroe Street, Suite 3300
    Chicago, Illinois 60603
    Telephone: (312) 201-4000

Counsel to Johnson Controls, Johnson Controls GMBH & Co. KG and Johnson Controls, Inc.